**NOT FOR PUBLICATION WITHOUT APPROVAL OF**
**THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



**MALA SUNDAR**
**PRESIDING JUDGE**

Richard J. Hughes Justice Complex
P.O. Box 975
Trenton, New Jersey 08625-0975
609 815-2922, Ext. 54630 Fax 609 376-3018

April 21, 2021

Johanna C. and Russell J. Schon
Plaintiffs, Self-Represented

Kevin I. Asadi, Esq.
Zager Fuchs, P.C.
Attorney for Defendant

 Re: Schon et al. v Township of Middletown
  Block 1104, Lot 10
  Docket No. 008076-2020

Dear Counsel:

 This letter opinion addresses the merits of plaintiffs' local property tax complaint which appealed the Monmouth County Board of Taxation's judgment reducing the local property tax assessment on the above captioned property (Subject) from the imposed amount of $770,200 to $695,000 for tax year 2020. Plaintiffs provided five comparable sales, and based on their unadjusted sale prices, asked the court to find the value as $650,000. Based on its appraiser's report (the appraiser being the assessor) which used three comparable sales, defendant (Township), asked the court to find the value as $725,000. The court finds that neither party has proffered proofs which credibly persuade for a change in the judgment of the County Board of Taxation, and therefore, the same is affirmed.

**FACTS**

 Plaintiffs own the Subject, a lot measuring 200 x 200 square feet (SF) which is improved by a colonial-style, two-storied single-family residence built in 1949 in the Township's residential zone R30, in a heavily wooded area. The home has 3,512 SF of gross living area (GLA), with four bedrooms, three baths, and a built-in two-car garage. There is an open porch and a deck. Plaintiffs made some renovations in 2003, adding rooms to the second floor and renovating the first floor (and per the assessor's report









included "new siding, a new front porch, a new roof, new living area, new interior floor coverings, new walls, trim and finish molding, a new kitchen, some new bathrooms, new electrical and new plumbing").[1]

## HIGHEST AND BEST USE

The court agrees with the Township that the highest and best use for the Subject is its current use: improved for single-family residential.

## ANALYSIS

A party challenging an assessment has the burden (a) to overcome the presumption of correctness afforded a challenged local property tax assessment, and then, (b) to persuade this court, with credible, objective evidence, why the Subject is over-assessed; and what is or should be, the Subject's value. MSGW Real Estate Fund, L.L.C. v. Borough of Mountain Lakes, 18 N.J. Tax 364, 373 (Tax 1998). The presumption "stands, until sufficient competent evidence to the contrary is adduced." Township of Little Egg Harbor v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998). The court can only find value based "on the evidence before it and the data that [is] properly at its disposal." F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985).

## VALUE CONCLUSIONS

*Plaintiffs' Proffer of Value*

Plaintiffs offered the unadjusted sales prices of the following five homes, all located in the Township, as indicators of the Subject's value as of October 1, 2019:

|  | Subject | Sale 1 | Sale 2 | Sale 3 | Sale 4 | Sale 5 |
|---|---|---|---|---|---|---|
|  | 119 Lindy | 4 Commanche Dr | 12 Oakmont | 63 Lone Oak | 122 Pine St | 230 Dwight |
| Location | Lincroft | Middletown | Lincroft | Middletown | Lincroft | Middletown |
| Distance | N/A | 5 miles | 1.8 miles | 5 miles |  |  |
| Sale Date | N/A | 12/05/19 | 10/18/19 | 06/25/19 | 07/10/19 | 10/04/19 |
| Sale Price | N/A | $615,000 | $665,000 | $665,000 | $599,900 | $505,000 |
| Age | 1949 | 1975 | 1974 | 1958 | 1947 | 1965 |
| Lot (acre) | 0.91 | 1.37 | 0.67 | 0.57 | 1.06 | 0.5 |

[1] The assessor's report also included permits obtained by plaintiffs in June and September of 2003 for an "addition" and electric work. Neither party submitted photographs or pictures of the Subject.

| GLA (SF) | 3,512 | 2,612 | 2,370 | 4,135 | 3,379 | 2,536 |
|---|---|---|---|---|---|---|
| Beds | 4 | 4 | 4 | 5 | 4 | 4 |
| Baths | 3 | 3 | 4 | 3 full; 2 half | 3 | 3 |
| Garage | 2-car att. | 2-car att. | 2-car att. | Yes | No | 2-car att. |
| Pool | No | Yes | Yes | Yes | No | No |
| Basement | Unfinished | No | Finished | Finished | Yes | No |
| Style | Colonial | Contemp/Custom | Colonial | Custom Mother/Daughter | Colonial | Colonial |
| NU | 0 | 0 | 0 | 0 | 0 | 10[2] |

Plaintiffs obtained the above information from online realty listings and the some from the property record cards (PRCs). They also drove by Sale 1 and Sale 5 for an exterior inspection. Pictures from the online listings were used as evidence of the comparables interiors. Plaintiffs contended that all sales, though in different sections of the Township (Lincroft and Middletown) were in the same school district, therefore, equally credible as comparables. Plaintiffs argued that the Subject should be valued at $650,000 based on the four comparables with the most emphasis on Sale 4 (122 Pine St.), since that was closest in proximity and was the basis for the assessment's reduction by the County Board of Taxation.

The court finds plaintiffs' value conclusion of $650,000 is problematic because there are some significant differences in physical characteristics (lot size, GLA, style) as to Sales 1-3 and 5 that appear to question their credibility as comparables. It is not unreasonable to conclude that buyers would pay more for a larger home (thus larger GLA) on a larger lot, and conversely, lesser for the smaller home on a smaller lot. Cf. Watnong Associates, Inc. v. Twp. of Morris, 11 N.J. Tax 108, 116 (Tax 1990) ("Absent some market evidence demonstrating that prospective lot purchasers are unconcerned about size differentials, it is unreasonable to believe that variations in lot sizes do not have significant or measurable influences on value"). The same applies for style of the house which can attract a different market. The

---

[2] "NU" means non-usable for purposes of Taxation's equalization ratio studies. NU10 is applies to "sales by guardians, trustees, executors, and administrators." See N.J.A.C. 18:12-1.1 (a). The Township provided the NU10 information during its cross-examination.

court is aware that for the most part no two homes are identical, which is why, for valuation purposes, the differences in physical characteristics are adjusted (by amounts based on market data) which will render the sold property comparable to the subject property. See U.S. Life Realty Corp. v. Twp. of Jackson, 9 N.J. Tax 66, 72 (Tax 1987) ("adjustments [are made] recognizing and explaining these differences," which would "relat[e] the two properties to each other in a meaningful way so that an estimate of the value of one can be determined from the value of the other"). Here, and due to the undisputed differences, which are not slight, the court is disinclined to use the unadjusted sale prices of comparables 1-3 and 5 as determinative of the Subject's value.

Further, as to Sale 5, the lack of verification of its bonafides obstructs its consideration as a credible comparable. Its NU10 classification does not automatically require its rejection as a comparable for valuation purposes, especially if as here, it was marketed through a realtor and per the multiple listing services (MLS) was on the market for 84 days. However, there was no verification that the seller, an executor, was under any duress or pressure to get rid of the house (which was listed at $599,000 but sold for $505,000).

The court agrees with plaintiffs that Sale 4 (122 Pine Street) appears to be the best comparable in terms of proximity (location-wise and to the assessment date), zone, age, bathroom count, and slight differences in lot size and GLA, zone. The number of adjustments would not be significant (garage, basement). The sale was not marked NU. The interior pictures do not represent the comparable as having issues. The court is unpersuaded by the Township's contention that the sale was an outlier because the Lincroft section of the Township (where the Subject is), had the fourth highest average sale price per SF (PSF) for the period October 1, 2018 to October 1, 2019. This is asking the court to place emphasis on averaging techniques as opposed to examining each comparable's credibility as a value indicator. See e.g. Watnong, 11 N.J. Tax 117, n.7 ("eliminating the sales prices at the extremes of his range of sales

prices" is a "deficient technique" since the "eliminated sales may have had a greater degree of similarity to the subject property than those reflected by a narrower band of sales prices. Absent adequate explanation, this procedure amounts to no more than an averaging process which is a dubious technique at best").[3]

Even if this court were to consider this one comparable for valuation of the Subject (generally, one comparable is not a sufficient sampling of the market, therefore, not reflective of the market), it is unable to find objective support for increasing the comparable's sale price by $45,000 (the reduction sought by plaintiffs herein, which is $650,000 from the County Board judgment of $695,000). Should this be allocated to the differences in the physical characteristics (as upward adjustments for the comparable's smaller GLA, lack of garage or basement finish)? But the court has no data perform this exercise. Both parties acknowledge that the property had a conservation easement, therefore, should the $45,000 adjustment be allocated entirely to the assumed negative impact of the conservation easement and alleged 55-feet buffer zone (presuming the easement is actually a burden and therefore negatively impacts the property's value)? Again, the court has no data or even a well-founded opinion to perform this exercise. Each party opined their view in this regard: plaintiffs' lay opinion that the easement was only as to the riverbank area in the rear, therefore, did not prohibit use of any buildable area; the assessor's net opinion that the alleged 55-feet buffer zone restricted the property's utility. Unfortunately, these lay/net opinions are not credible bases for concluding that the easement has a negative impact, and requires an upward adjustment of $45,000 in this regard.

In sum, based on the above reasoning, the court finds that plaintiffs did not provide credible or competent proof to reduce the judgment of the County Board of Taxation.

---

[3] The assessor's rejection of 122 Pine Street as a credible comparable is also questionable when he used this property to extract an adjustment for "full basement to slab" in his appraisal report.

*Township's Proffer of Value*

The Township's assessor opined the Subject's value as $725,000 based on his appraisal report. The assessor maintained that only sales in the Lincroft section of the Township (where the Subject is located) are comparable, that section being more desirable with a better school system.  He used the adjusted sale prices of three comparables, all located on the Township's Lincroft section as follows:

| | Subject | Sale 1[4] | Adjust. | Sale 2 | Adjust. | Sale 3 | Adjust. |
|---|---|---|---|---|---|---|---|
| Address | 119 Lindy Lane | 12 Oakmont Ct. | | 101 Oak Glen Ct. | | 132 Roger Ave. | |
| Location | Lincroft | Lincroft | | Lincroft | | Lincroft | |
| Distance | | 1.5 miles | | 0.3 mile | | 0.7 mile | |
| Price | N/A | $665,000 | | $670,000 | | $810,000 | |
| Sale Date | | 10/18/19 | | 5/2/18 | $85,650 | 6/28/19 | |
| Lot (acre) | 0.91 | 0.67 | | 1.12 | | 0.5 | $39,081 |
| Style | Colonial | Colonial | | Colonial | | Custom/Split | |
| Age | 1949 | 1974 | | 1984 | | 1961 | ($15,948) |
| GLA (SF) | 3,156 | 2,370 | $27,510 | 3,224 | | 3,534 | ($13,230) |
| Beds | 4 | 4 | | 4 | | 5 | |
| Full Baths | 3 | 2 | $5,962 | 2 | $5,962 | 3 | |
| Half Baths | 0 | 2 | ($5,962) | 1 | ($2,981) | 1 | ($2,981) |
| Reno. Baths | Average | 1.5 bath | ($5,334) | Average | | 1 | ($8,906) |
| Reno. Kitchen | Average | Average | | Average | | Yes | ($49,087)[5] |
| Basement | Unfinished | Finished | ($5,400) | Unfinished | | Partial Fin. | $9,794 ($5,400) |
| Fireplace | Yes | Yes | | Yes | | Yes | |
| Garage | 2-car | 2-car | | 2-car | | 2-car | |
| Porch/Patio/ Deck | Deck | Deck/Patio | ($1,200) | Patio | | Deck/Patio | ($1,200) |
| Pool | No | Yes | ($8,448) | Yes | ($8,448) | Yes & Shed | ($10,448) |
| Net Adjust. | | | $7,128 | | $80,183 | | ($ 9,238) |
| Adjusted Price | | | $672,128 | | $750,183 | | $751,675[6] |

Adjustments were made based on a "paired sales" analysis whereby to derive the adjustment amount of a particular amenity or feature, the assessor compared two properties he deemed "most"

---

[4]  This sale was also used by plaintiffs.
[5]  Per the assessor, this adjustment for kitchen renovation was mistakenly omitted in the original report.
[6]  The original adjusted price of $800,762 was corrected at trial as $751,674 due to the adjustment for kitchen renovation.

similar, one with and the other without the amenity or feature. Then, he adjusted the sale price of one of the properties to make it otherwise comparable, except for the feature. He then attributed the difference between adjusted and unadjusted sale prices, and/or at "cost new less depreciation" to support the adjustment amount for the amenity or feature.

The sales which he deemed as paired listed all physical attributes for each of the two properties such as GLA; chronological and effective age; the building's style and class; bedroom and bathroom count; zone; neighborhood designation (e.g., "L138" which is Lincroft, the Subject's neighborhood); lot sizes; their "value control sectors" or VCS (the property's delineated location on the tax map for assessment/valuation purposes); comments as to the condition of the kitchen or bathroom (M-modern; A-average); basement type and condition. These were in addition to the property's identification, street address, sale price, sale date, NU classification, and in some instances, the number of days on the market (DOM). An example for the adjustment for "Kitchen Renovation" based on a paired sale was thus:



| Block | Lot | Qual | Property Location | Class | Sale Price | Deed Date | NU# | Sq Ft | Price/SF | Rooms | Bed | Baths | Fin.Bsmt | Style | Class2 | Year Built | Age | Condition | Neigh | Zone | VCS | Lot Size | Land Desc | Comments | Pool Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1065 | 1 | | 1 MERION DR | 2 | $590,000.00 | 9/25/2019 | | 2258 | 261 | 8 | 4 | 2.5 | | 5 | 18 | 1969 | 26 | | 3 | LI38 | R-22 | RTTA | 0 | 122X188 IRR | INT:3 KIT:A BTHS:A B:FB DOM:31 | Yes |
| 1079 | 4 | | 131 WHISPERING PINES DR | 2 | $622,500.00 | 8/19/2019 | | 2340 | 266 | 8 | 4 | 2.5 | | 5 | 18 | 1973 | 26 | | 3 | LI38 | R-22 | WWRB | 0 | 128X175 | INT:3 KIT:M BTHS:A B:FB DOM:21 | Yes |
| | | | | | | | | 82 | | | | | | | | | | | | | | | | | |
| | | | Kitchen Renovation | | $ 32,500.00 | $ 13.89 | | | | | | | | | | | | | | | | | | | |

The above data reproduced from the assessor's report, shows that the assessor concluded the adjustment as $13.89 PSF (which appears to be a result of $32,500, the difference in the sale prices, divided by 2340 SF, the GLA of 131 Whispering Pines Drive). He then applied $13.89 PSF to the 3,534 SF GLA of his comparable 3 (which he claimed had a renovated kitchen) for a negative adjustment of $49,087.

Another example of a "paired sale" based adjustment for finished versus unfinished basement was thus:

| Block | Lot | Qual | Property Location | Class | Sale Price | Deed Date | NU# | Sq Ft | Price/SF | Rooms | Bed | Baths | Fin.Bsmt | Style | Class2 | Year Built | Age | Condition | Neigh | Zone | VCS | Land Desc | Comments | Pool Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1065 | 1 | | 1 MERION DR | 2 | $590,000.00 | 9/25/2019 | | 2258 | 261 | 8 | 4 | 2.5 | | 5 | 18 | 1969 | 26 | 3 | LI38 | R-22 | RTTA | 122X188 IRR | INT:3 KIT:A BTHS:A B:FB DOM:31 | Yes |
| 1079 | 11 | | 57 REDFIELD RD | 2 | $569,900.00 | 4/30/2019 | | 2678 | 212 | 8 | 4 | 2.5 | | 5 | 18 | 1975 | 25 | 3 | LI38 | R-22 | WWRB | 125X188 IRR | INT:3 KIT:A BTHS:A B:UF DOM:5 | Yes |

| Sqft Difference | Sqft Adj. @$35 | Adjusted Sale Price | Finish Basement Adjustment | |
|---|---|---|---|---|
| 420 | $ 14,700.00 | $ 584,600.00 | $ 5,400.00 | $ 2.02 |

This shows that the assessor concluded the adjustment at $5,400, using the same sale of 1 Merion Drive (see preceding paragraph) and another sale, 57 Redfield Road. He first adjusted the GLA difference by $35 PSF, which then increased the sale price of 57 Redfield Road to $584,600 (although its GLA was larger than the 2,258 SF of GLA in 1 Merion Drive), and the sale price difference ($590,000 less $584,600) was $5,400 which he applied to his comparable 1 as a negative adjustment (since it had a finished basement, and the Subject had an unfinished basement).

Adjustments using the similar methodology was extracted for differences in GLA, lot size, pool, bed and bath count, style, and time (market) (which was also based on two allegedly "paired" sales).

As with plaintiffs' conclusion of value, here also the court is unpersuaded that the Township's value conclusion requires an increase to the judgment of the County Board of Taxation. The paired sales analysis for adjustments, while a credible methodology, is questionable as applied here. As was noted by this court:

> The use of paired sales may be helpful to determine the difference in value of a single difference when two properties are equivalent in all respects but one. Paired data analysis should be developed with extreme care to ensure that the properties are truly comparable and that other differences do not exist . . . Care must be taken when relying on pairs of adjusted prices because the difference measured may not represent the actual difference in value to the characteristic being studied.
>
> [Palisadium Management Corp. v. Borough of Cliffside Park, 29 N.J. Tax 245, 272 (Tax 2016) (citation and internal quotation marks omitted), aff'd, 456 N.J. Super. 293 (App. Div. 2018).]

The court thus found troublesome that "the very same comparable sales" which had been used to extract an adjustment for "parking deficiency," was also used to "support yet another paired analysis based on location." Id. at 272. Thus, multiple use of the paired sales to justify different adjustments "casts doubt on the initial use of the properties for the parking adjustment and vice versa" which required rejection of the adjustments based on a paired sales analysis. Ibid.

The adjustments extracted here suffer from some of the same problems. Each allegedly "paired" sale required more than one adjustment (other than the item for which an adjustment was being extracted) to first become comparable, thus, qualified to be paired, such as for GLA or lot size. For instance, to obtain his time adjustment, the assessor had to initially adjust the first pair of sales for GLA and half-bath, and had to adjust the second pair of sales for half-bath, GLA, and DOM.[7] These several internal adjustments to first make them comparable, cast doubt as to the resultant adjustment extraction. And some of those internal adjustments itself are questionable: for instance, as noted above, for obtaining an adjustment for basement finish, he increased the sale price of the property which had a larger GLA (57 Redfield Road) than the second of its pair (1 Merion Drive). There is no explanation why this was done.

Moreover, some of the allegedly "paired" sales had other differences which were not addressed. In several instances, each set of paired sale for a particular adjustment had differences other than just GLA. Some were in different zones. Some were in a different VCS. Some were of different

---

[7] The first pair of paired sales was 61 Majestic Avenue (sold 3/28/18 for $800,000, which he adjusted to $823,246.04 by (1) -$2,981 for its additional half bath; (2) +$33,530 for its smaller GLA at $35 PSF; and (3) -$7,302.96 for DOM) and 46 Majestic Avenue (sold 7/1/19 for $900,000). The adjustment for time was $76,753.96 ($900,000 less $823,246) which translated to a 9.32% change or $166.86 per day.

The second pair of paired sales was 82 Lehigh Drive (sold 8/21/18 for $712,500, which he adjusted to $736,067 by (1) +$17,605 at $35 PSF for its smaller GLA; and (2) +5,962 for its lack of one full bath) and 73 Lehigh Drive (sold 7/12/19 for $780,000). The adjustment was $43,933 ($780,000 less $736,067) which translated to a 5.96% change or $135.18 per day.

He reconciled these two pairs of paired sales for a time adjustment of $150 (rounded) per day. However, he did not use this number. The $85,650 adjustment amount divided by 517 days (the time between the sale date of 05/02/18 and the October 1, 2019 assessment date) is about $166 per day.

chronological age. Some had a different lot size. For instance, in extracting a GLA adjustment, the "paired" sales (1 Braeburn Drive and 25 White Oakridge Road) had differences in lot size (0.5 acres versus 1.03 acres); chronological age (1969 versus 1977); zone (R-22 versus R-45); VCS (RTTA versus WRAC).[8] Yet, the assessor considered them a credible "paired" sale. This is problematic since the very "premise" of a paired sales analysis is "that when two properties are equivalent in all respects but one, the value of the single difference can be measured by the difference in price between the two properties." Appraisal Institute, The Appraisal of Real Estate, 398 (14th ed. 2013). Further, there was no testimony whether the assessor actually inspected the interiors of any of the paired sale sets to decide whether the kitchen or bath or bedrooms were in average condition or were modern. This also calls to question the attribution of the adjusted sale price difference to a renovated kitchen or bathroom.

Thus, the court finds that the Township has also not provided credible proof to increase the amount of the County Board of Taxation's judgment.

**CONCLUSION**

For the aforementioned reasons, the court affirms the judgment of the County Board of Taxation

Very Truly Yours,

/s/ Mala Sundar_____
Mala Sundar, P.J.T.C.

---

[8] The court was not enlightened as to the acronyms or the significance of the different VCS's as to any "paired" sale.